THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PETER NEWSOME, Defendant-Appellant.

(No. 55429;

First District—April 19, 1972.

Michael P. Toomin, of Chicago, (Lampert, Hoey & Toomin, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Daniel J. Pierce, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

Defendant, Peter Newsome, was indicted for the offenses of aggravated battery causing great bodily harm, attempted murder, and aggravated battery by use of a deadly weapon against the person of Stanley L. Brown. A fourth count of the indictment charged the defendant with the attempted murder of Ronald Epting. After a bench trial in the Circuit Court of Cook County, the defendant was found guilty of both attempted murder of Stanley Brown and aggravated battery by use of a deadly weapon against him. The court then sentenced the defendant to not less than five nor more than twelve years in the Illinois State Penitentiary.

The issues presented on appeal are: whether the defendant was denied due process of law by the refusal of the trial court to grant a pretrial hearing on the issue of certain identification testimony; whether the State proved beyond a reasonable doubt the defendant was the person

who committed the offenses alleged in the indictment; and whether the court considered incompetent evidence which was prejudicial to the defendant in arriving at its findings.

On January 10, 1970, at about 4:00 P.M., Stanley Brown left his home at 6030 South Carpenter Street, Chicago, with two teen-age companions. One of these companions was Ronald Epting. As Brown walked down the stairs and turned to walk south on the street, he looked over his shoulder across a nearby vacant lot and saw the defendant, Peter New-some, and another youth, Carleton Thomas, in a gangway. This gang-way is directly across the street from Brown's house about fifty to sixty feet away. Brown testified the defendant had a single barrel shotgun and Carleton Thomas had a pump shotgun. At this point, Thomas fired a shot at Brown hitting him in the left side of the head. As he attempted to get away, Brown saw the defendant shoot him in the forehead. Brown's stepfather then came to his aid, dragged him to the street and hailed a passing police car which took Brown to the Englewood Hospital. Ronald Epting was also wounded and taken to Englewood Hospital. As a result of his injuries, Stanley Brown lost his right eye and suffered damage to his left eye.

Brown testified he knew both assailants by their first names and approximately where each lived. Thelma Brown, the victim's mother, also testified as to the first names of the assailants and approximately where each resided. She further testified that following the shooting she observed three boys in the gangway across the street. Two of the boys had guns. Mrs. Brown identified the two with guns as the defendant and Carleton Thomas, both of whom she had seen around the neighbor-hood.

Ronald Epting, who was also wounded by a shotgun blast, testified he saw two assailants with shotguns immediately after Stanley Brown was shot. They were in the gangway across the street from the Brown house. He identified the assailants as the defendant and Carleton Thomas. As he ran from them he was wounded in the back and taken to Englewood Hospital. He testified that while he was in the hospital the defendant and Carleton Thomas' brother saw him and threatened his life if he appeared in court.

The defendant, Peter Newsome, attempted to refute this and other testimony by presenting alibi witnesses who testified that at the time the shooting occurred he was at home. The alibi witnesses were his mother, aunt, uncle and cousin. All established that at approximately 4:00 P.M. on January 20, 1970, Peter Newsome was at home.

Five days after the shooting, the defendant entered the Seventh District Police Station with some other boys looking for a friend. Thelma

Brown, the victim's mother, then identified the defendant as one of the assailants, and he was immediately taken into custody.

Defendant was subsequently indicted and tried for the shooting of both Stanley Brown and Ronald Epting. It is from his conviction on two of the four counts of his indictment that he herein appeals.

Following assignment of the instant case for trial, defense counsel requested the trial court grant a pretrial hearing to determine whether any suggestive influences had been brought to bear upon Ronald Epting in his identification of the defendant. Epting was named as the victim of attempted murder in the fourth count of the indictment against the defendant. The trial court denied this request. The defendant contends this refusal by the trial court was a denial of due process of law. We do not agree with this contention.

Defendant predicated his request for a pretrial hearing upon the holding in *People v. Bean* (1970), 121 Ill.App.2d 332. In *Bean*, the defendant was arrested without probable cause. This arrest led to the identification of the defendant by a robbery victim. On appeal it was conceded the arrest was improper and that without the improper arrest the identification would never have taken place. Consequently, the in-court identification testimony of the victim should have been suppressed as the product of an unlawful arrest.

The instant case is clearly distinguishable from *Bean*. In this case, the defendant made no showing of an unlawful arrest. Moreover, defense counsel admitted probable cause for the arrest of the defendant arising from the alleged shotgun attack had been shown at a preliminary hearing two months prior. Consequently, since there was no unlawful arrest in the instant case, the *Bean* decision does not apply.

A second argument urged by defendant in attempting to gain a pretrial hearing is such hearing was necessary to determine whether any suggestive influences had been brought to bear upon the witness in his pretrial identification of the defendant. After interviewing Ronald Epting, defense counsel admitted to the trial court that up to that time there had not been any pretrial confrontation or identification by the witness.

■■ This court readily recognizes the right of an accused to show a pretrial confrontation is so wanting in fairness that it is conducive to a deprivation of due process. (*Stovall v. Denno* (1967), 388 U.S. 293.) The denial of defendant's motion for a pretrial hearing, by defense counsel's own admission, could not have prejudiced the defendant in any respect since there was never any pretrial identification upon which suggestive influences could have been brought to bear. When both the trial court and defense counsel know there is no identification susceptible

to suppression, there is no reason to hold such a hearing. Since the defendant failed to show a pretrial confrontation or identification so wanting in fairness as to deprive him of due process, we see no basis for allowing a motion for a pretrial hearing.

Another issue which defendant raises on appeal is whether the State established beyond a reasonable doubt that the defendant was guilty of the offenses alleged in the indictment.

The trial court found the defendant guilty on two of the four counts for which he was indicted, the attempted murder of Stanley Brown and aggravated battery by the use of a deadly weapon against Brown. The decision was based upon the testimony at trial of three eyewitnesses who stated they observed the defendant standing in a gangway holding a shotgun at the time of the shooting. The victim, Stanley Brown, testified further that he actually saw the defendant shoot him in the face.

■■■ The defendant attempts to discredit this eyewitness testimony by a series of explanations concerning the eyewitness testimony and the police report of the incident. These explanations are intended to raise the element of reasonable doubt. It is a well settled proposition of Illinois law, as stated by the Supreme Court in *People v. Glover* (1971), 49 Ill.2d 78, that it is the province of the trier of fact, here the judge, to determine the weight and credibility of the witnesses who appear before the court. A finding of guilty will be disturbed by this court only when the evidence is so unsatisfactory as to leave a reasonable doubt. Since the trier of fact had the opportunity to hear the testimony of the three eyewitnesses, one of whom was the victim, and weight its credibility, and since there is nothing in the record which renders the eyewitness testimony so unsatisfactory as to raise a reasonable doubt, this court will not disturb the judgment of the trier of fact.

The final issue raised by the defendant is whether the court considered incompetent evidence which was prejudicial to the defendant in arriving at its findings.

The alleged incompetent evidence which the defendant claims the trial court considered arose from the testimony given by the defendant's mother, Mrs. Newsome, and the rebuttal testimony given thereafter by the victim's mother, Thelma Brown. The direct testimony of Mrs. Newsome was to the effect that defendant was at home when the shooting of Stanley Brown occurred. On cross-examination, the prosecutor sought to lay a foundation for impeachment of the witness by showing that on a prior occasion the witness made statements to the victim's mother which were substantially inconsistent with her direct testimony. During cross-examination, Mrs. Newsome admitted having a conversation with Mrs. Brown on a prior occasion but denied mentioning the

defendant had left the house around the time of the shooting or the defendant may have fired one shot.

With the foundation established during the cross-examination of the defendant's mother, the State called the victim's mother to testify in rebuttal to the claims put forth by Mrs. Newsome. The victim's mother, Mrs. Brown, testified Mrs. Newsome did in fact make statements to Mrs. Brown that the defendant was not at home when the shootings occurred and that he might have fired one shot. It is the admission of this testimony by Mrs. Brown which the defendant claims was hearsay and, as such, incompetent as against the accused.

■■ Evidence of prior inconsistent statements by a witness is admissible to impeach the credibility of a witness. Such evidence is not admissible as proof of the facts stated by the witness, but to cast doubt on the witness' testimony by showing her inconsistency. Such evidence is therefore not hearsay. *People v. Smith* (1945), 391 Ill. 172.

■■ The proper foundation having been laid during the cross-examination of Mrs. Newsome, her prior inconsistent statements were placed before the court in rebuttal to her testimony. These statements were admitted to cast doubt over her credibility and were therefore not admitted as incompetent evidence prejudicial to the defendant. Any questions as to the credibility of the witness were for the resolution of the trial judge as the trier of fact. We will not interfere with his determination in this regard.

For the reasons stated herein, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

BURMAN and ADESKO, JJ., concur.