THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee *v.*
DONALD GLOVER, Defendant-Appellant.

Fourth District    No. 14854

Opinion filed October 12, 1978.

Richard J. Wilson and Barbara A. Chasnoff, both of the State Appellate
Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert C. Perry and James
G. Condon, both of State's Attorneys Appellate Service Commission, of counsel),
for the People.

Mr. JUSTICE REARDON delivered the opinion of the court:

The defendant, Donald Glover, was charged by information on July 26,
1977, with unlawful restraint and intimidation in violation of sections 10—
3 and 12—6 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, pars.
10—3, 12—6). The information alleged that the defendant entered the
apartment of Nora Williams on June 6, 1977, at approximately 8 a.m.,
and, under threat of physical harm, forced her to disrobe and perform an
act of masturbation upon him. Following jury trial, the defendant was

found guilty of both offenses and sentenced to concurrent terms of 1 to 3 years' imprisonment for each offense.

On appeal, defendant contends: (1) The trial court erred in denying, as untimely, his motion to suppress evidence of his arrest and all subsequent identification by the victim; (2) that alternatively, if the motion to suppress was properly denied, failure of counsel to timely file the motion deprived him of effective assistance of counsel; and (3) the admission into evidence of testimony by the arresting officer concerning the location of defendant's arrest was error resulting in substantial prejudice.

The record discloses that Williams described her assailant to police after the incident as a black male, 5 feet 5 inches tall with light complexion, possibly mulatto, and clean shaven. On July 25, 1977, seven weeks after the incident, Officer Clarence Keller went to Wood Hill Towers in response to a call to look for a black male who was "running around" in the North Tower. As Keller entered a stairway on the fifth floor, he heard someone coming down the stairs rapidly. He stopped that person and asked for some identification. Since the individual had none, he was taken into custody. That same day, Williams identified this individual in a lineup as her assailant.

On August 16, 1977, defense counsel filed a motion for discovery. The State filed an answer on August 25 which contained a police report written by one of the arresting officers. Trial was held before a jury on November 15, 1977. On that day, but prior to commencement of trial, defense counsel submitted a written motion to suppress the defendant's arrest and the resulting custodial identification of the defendant by the victim. When asked by the court why he had not filed a motion prior to the trial, counsel stated that he was not aware of the merits of the motion until he reviewed the case the weekend before trial. Although defense counsel indicated that the arresting officers had been subpoenaed and should be present for an immediate hearing, the trial court denied the motion as untimely. At trial, Williams related the details of the incident and made an in-court identification of the defendant as the man who had entered her apartment. Over objection, Officer Keller testified as to the events and circumstances of the defendant's arrest.

Defendant contends that the trial court abused its discretion in refusing to hold a hearing on his motion to suppress because identification was a major issue at trial and a hearing on the motion could have been held without significant inconvenience to the court. Defendant argues that his arrest was without probable cause and that therefore, all subsequent identification of him by the victim was tainted and should have been suppressed.

In *People v. Bean* (1970), 121 Ill. App. 2d 332, 257 N.E.2d 562, the

defendant and a companion were stopped by police on a Chicago street because the companion resembled a man wanted by the police. When they were unable to produce any identification, both were searched, and property belonging to Willie Shard was found on each. Both were subsequently arrested for this unrelated incident and Shard identified them as the individuals who had robbed him two days earlier. The trial court granted defendant's motion to suppress the physical evidence, but denied defendant's motion to suppress the identification. Although conceding the illegality of the arrest, the State argued that the identification testimony was obtained independently of the unlawful search and arrest. On review, the appellate court stated that the mere passage of time between arrest and identification did not render the identification of independent origin. The exhibition of the defendant to the victim was a direct consequence of the unlawful detention; the identification would not have occurred otherwise. The appellate court ordered that all testimony as to identification of the defendant by the victim, including in-court identification, be suppressed.

The State argues that the in-court identification in the present case would not have to be suppressed because that identification had an origin independent of the arrest: Williams' opportunity to observe the defendant at the time of the offense. In support of this contention, the State cites *People v. Holdman* (1977), 51 Ill. App. 3d 484, 366 N.E.2d 993, and *People v. Hornal* (1975), 29 Ill. App. 3d 308, 330 N.E.2d 225. In *Holdman*, the victim was robbed by two men who fled in a car driven by a third. The victim summoned police immediately and soon thereafter identified the robbers at an accident scene where they were under police arrest. On review, the appellate court held that the initial arrests of the defendants were unlawful for the lack of probable cause. Consequently, the court stated that the accident scene identification should have been suppressed since it was a direct result of the illegal arrest. The court noted that the in-court identification was admissible only if there was a basis independent of the tainted identification. Finding that the victim's in-court identification was directly affected by his viewing of the defendants just after their illegal arrest, the court held that the State failed to establish by clear and convincing evidence that the in-court identification had an independent origin arising from the victim's uninfluenced observation of the crime.

In *Hornal*, the appellate court determined that the defendant was illegally arrested and that the lineup identification made during custody should have been suppressed. There was, however, an independent basis for the victim's in-court identification. The victim was able to give police the license number of the vehicle in which her assailants fled. This license number had been issued to the defendant. The court noted that the police

had probable cause to arrest the defendant, discovered independently of defendant's illegal arrest, so that the victim's subsequent in-court identification was not acquired by exploiting the defendant's illegal arrest.

In the instant case, success on the suppression motion was a distinct possibility in that Officer Keller's testimony at trial did not indicate anything that would have given him reasonable grounds to believe an offense had been committed. The defendant was taken into custody because he was unable to produce any personal identification. Assuming that defendant's arrest was illegal for lack of probable cause, the holdings of *Bean, Holdman,* and *Hornal* require that all subsequent identification by the victim in this action be suppressed unless the victim's in-court identification had a basis independent of the arrest. After careful review of the evidence, we conclude that such an independent basis does not exist. Both the victim's lineup identification and her in-court identification were directly attributable to defendant's arrest. Had the defendant not been in custody at the time of those identifications, his identity would have been otherwise unknown. '

■■ For those reasons, we remand the cause to the trial court solely for a full evidentiary hearing on the question of the legality of defendant's arrest. If it is determined at the hearing that the arrest was illegal, making all subsequent identification by the victim of the defendant inadmissible, the trial court is directed to vacate the judgment of conviction and grant the defendant a new trial. On the other hand, if the trial court determines that the arrest was legal, making all subsequent identification by the victim admissible, the trial court is directed to enter a new judgment of conviction. We note in passing, that although defense counsel was dilatory in presenting a motion to suppress, waiver principles may be relaxed when fundamental fairness so requires. (See *People v. Johnson* (1967), 38 Ill. 2d 399, 403, 231 N.E.2d 447.) Because of our disposition in this case, we do not reach other issues raised by the defendant.

Remanded with directions.

TRAPP and CRAVEN, JJ., concur.