THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RUBIN MALDONADO, Defendant-Appellant.

First District (1st Division)    No. 80-2024

Opinion filed November 16, 1981.

Nicholas A. DeJohn, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Richard B. Levy, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

After a bench trial, Rubin Maldonado (defendant) was convicted of murder and sentenced to 22 years. Defendant appeals.

Rubin Barriga testified that on February 10, 1979, at approximately 1:50 a.m., he was standing with the deceased at a bus stop a few doors away from a tavern. The area was illuminated by a sign from the tavern. A person, whom Barriga identified as defendant, left a nearby tavern, the Los Palmos, and approached them. Defendant came within 1 or 2 feet of them. A few words were spoken between defendant and the deceased. Defendant pulled a gun from his waistband, shot the deceased twice and fled to a car a few feet away. Barriga stated approximately 8 minutes transpired from the time defendant left the Los Palmos tavern and the time he fled from the scene.

Milo Stijovic, bartender at the Los Palmos, testified defendant was in the bar from about 11 p.m. He did not notice what time defendant left. At approximately 1:45 a.m. he began to clear patrons from the tavern which closed at 2 a.m. About 5 to 10 minutes after he "threw the people out" he heard two shots fired.

## I

Before trial, a hearing was held on defendant's motion to quash his arrest and suppress evidence. The trial court held the arrest was unlawful

and suppressed a lineup identification of defendant by Barriga which was made while defendant was in police custody. The trial court, however, refused to suppress Barriga's photographic and in-court identifications of defendant. Defendant contends these identifications were tainted by the unlawful arrest and should have been suppressed. We disagree.

The standard to be employed regarding suppression of such evidence is set forth in *United States v. Crews* (1980), 445 U.S. 463, 63 L. Ed. 2d 537, 100 S. Ct. 1244. In *Crews* the Court reversed the suppression of an in-court identification despite an unlawful arrest and impermissible pretrial photographic and lineup identifications because "the witness' courtroom identification rested on an independent recollection of her initial encounter with the assailant, uninfluenced by the trial identification * * *. In short, the victim's capacity to identify her assailant in court neither resulted from nor was biased by the unlawful police conduct committed long after she had developed that capacity." 445 U.S. 463, 473, 63 L. Ed. 2d 537, 547, 100 S. Ct. 1244, 1251.

■■ In the case at bar, both the photographic and courtroom identifications of defendant by Barriga were based on a sufficient and independent recollection and were not fostered by police misconduct. The photographic identification was made at about the same time defendant was being arrested. Barriga made the identification to one officer while others were arresting defendant. The photograph of defendant used in the interrogation of Barriga was obtained in the course of an arrest of defendant some 5 months before on an unrelated charge. It is definite and certain that the photographic identification of defendant was not influenced in any way by defendant's unlawful arrest but was based upon the independent recollection of the witness, precisely as in *Crews*.

■■ The record establishes Barriga had ample basis for courtroom identification independent of the tainted lineup. The witness viewed the assailant for "a few" or "approximately eight" minutes, at a distance of between 1 and 2 feet in what the witness considered sufficient lighting. Furthermore, Barriga accurately identified the assailant to a police investigator before defendant was arrested. See *People v. McTush* (1980), 81 Ill. 2d 513, 521, 410 N.E.2d 861.

Defendant urges *People v. Bean* (1970), 121 Ill. App. 2d 332, 257 N.E.2d 562, requires reversal of the instant case. In *Bean* the court reversed a conviction holding "all subsequent identifications of defendant by the victim, including in-court identification, are directly traceable to the unlawful detention of defendant." (121 Ill. App. 2d 332, 335.) However, we have recently held "the 'but for' test used in *Bean* 'exceeds the mandate of the United States Supreme Court and the courts of this state.'" (*People v. Dangerfield* (1979), 78 Ill. App. 3d 1046, 1048, 398 N.E.2d 57, *appeal denied* (1980), 79 Ill. 2d 632, quoting from *People v. Pettis* (1973),

12 Ill. App. 3d 123, 126, 298 N.E.2d 372.) The correct test to be applied in the instant case is set forth in *Crews*. Furthermore, identification by photographs has been long approved by the courts of Illinois for practical reasons. In the case at bar there is no contention that the photographic identification was predicated upon impermissible suggestion. See *People v. Allender* (1977), 69 Ill. 2d 38, 370 N.E.2d 509, citing *Simmons v. United States* (1968), 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967.

## II

Defendant argues the trial court improperly restricted the cross-examination of Barriga regarding the time factor of his opportunity to observe the man who shot the deceased. Barriga testified he observed the defendant for approximately 8 minutes. Later on cross-examination he stated "I'm only saying in a few minutes this happened." Defendant was not allowed to ask the witness "what a few minutes to him would be."

■■ The scope of cross-examination "rests within the sound discretion of the trial court," and its ruling will be reversed only if an abuse of discretion is shown. (*People v. Blakes* (1976), 63 Ill. 2d 354, 358, 348 N.E.2d 170.) We find no abuse of discretion here. Furthermore, we see no prejudice to defendant as a result of the rulings of the trial court. (See *People v. Myers* (1980), 92 Ill. App. 3d 229, 237, 415 N.E.2d 1108.) Actually, counsel for defendant asked the witness three times how long he viewed defendant and always received the same answer. To the last question the witness answered "about eight minutes." The witness also said, "I'm only saying that in a few minutes this happened." The trial court properly refused a fourth inquiry as to what the witness meant by "a few minutes." Even a very restricted estimate of a few minutes would have offered the witness sufficient opportunity to observe the assailant. (Compare, *e.g.*, *In re Troutman* (1978), 57 Ill. App. 3d 58, 60-61, 372 N.E.2d 1062.) We find no unreasonable curtailment of cross-examination by defendant.

## III

Defendant contends the prosecutor made several misstatements of fact in final argument which prejudiced defendant. Those misstatements include there was "sufficient lighting" for the eyewitness to observe the assailant, there were streetlights near the scene of the shooting, the eyewitness observed the assailant for 5 to 8 to 10 minutes, the eyewitness was not impeached at trial, etc. It is important to note a prosecutor has great latitude in his closing argument. (*People v. Dominique* (1980), 86 Ill. App. 3d 794, 806, 408 N.E.2d 280, *appeal denied* (1980), 81 Ill. 2d 603.) The substance and style of closing argument is within the discretion of the trial court, and its finding will not be disturbed absent extreme error. *People v.*

*Bloodworth* (1979), 68 Ill. App. 3d 341, 349-50, 385 N.E.2d 904.

■■ We find that all the alleged misstatements complained of were at most nonmaterial and unintentional misstatements of fact which do not constitute reversible error. *People v. Dykes* (1978), 66 Ill. App. 3d 403, 408, 383 N.E.2d 1210, *appeal denied* (1979), 74 Ill. 2d 587.

## IV

Finally, defendant argues he was not proved guilty beyond a reasonable doubt. Because we do not find the "evidence is so palpably contrary to the finding or so unreasonable, improbable or unsatisfactory as to cause reasonable doubt as to the guilt of the accused" we will not overturn the verdict of the trial court. (*People v. Reese* (1973), 54 Ill. 2d 51, 58, 294 N.E.2d 288.) It is important to note " 'where the identification of the accused is at issue, the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made.' " *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513, quoting from *People v. Stringer* (1972), 52 Ill. 2d 564, 569, 289 N.E.2d 631.

■■ In the case at bar, the eyewitness did observe the accused so as to permit a positive identification. At the least he observed the assailant for a few minutes at extremely close proximity. Furthermore, the witness' testimony is supported by that of the bartender at the Los Palmos tavern who saw the defendant at the scene of the crime on the night in question. For the above reasons the judgment appealed from is affirmed.

Judgment affirmed.

CAMPBELL, P. J., and O'CONNOR, J., concur.